IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| SYSTEMS APPLICATION & TECHNOLOGIES, INC. | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:18-cv-2607-PX |
| | * | |
| UNITED STATES OF AMERICA, | * | |
| Defendant. | * | |

\*\*\*\*\*\*

**MEMORANDUM OPINION**

Plaintiff Systems Application & Technologies, Inc. ("SA-Tech"), an independent contractor for the United States Navy, has brought this action against the United States Government, with the hope of minimizing its financial exposure in an ongoing state class action concerning wages paid to its employees. Presently pending is the Government's motion to dismiss the Amended Complaint or alternatively for summary judgment to be granted in its favor (ECF No. 49). SA-Tech cross moves for partial summary judgment (ECF No. 52). The motions are fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the Court grants the Government's motion to dismiss for lack of subject-matter jurisdiction and denies as moot SA-Tech's cross-motion for partial summary judgment.

**I.      Background**

Since 2008, SA-Tech has provided support services to the Navy for military training exercises and weapons testing conducted by the Navy's Pacific Targets and Maritime Operations division for land-based and maritime operations. ECF No. 3 at 2; ECF No. 24-11 at 3. SA-Tech

1

has executed four contracts with the Navy in 2008,[1] 2012, 2013, and 2018 which govern the parties' business relationship. The contracts require the Navy to pay SA-Tech on a cost reimbursement basis. ECF No. 52-1 at 16-17, 21; ECF No. 3 at 2, 89-90, 104, 160. For purposes of this motion, the contracts have all required SA-Tech employees, and the staff of SA-Tech's subcontractor, Cardinal Point Captains ("CPC"), to spend "significant portions of time at sea" on Navy-owned ships. ECF No. 24-11 at 3.

In August 2015, current and former employees of SA-Tech and CPC filed a class action for back wages in California Superior Court (the "California Action"). ECF No. 24-4; ECF No. 24-11 at 4. They allege that SA-Tech and CPC violated state law by failing to provide meal periods, rest breaks, and overtime pay to their employees working on vessels. *Id.*; *see also* ECF No. 24-6 at 3-4. The California Action is still pending, and the vitality of the wage claims ultimately turns on the applicability of a California Supreme Court decision, which held employers liable to pay wages for all time that an employee is required to be on the employer's premises, even if not actively working. *See Mendiola v. CPS Sec. Sols., Inc*., 60 Cal. 4th 833, 849 (2015) (finding security guard's time asleep or on-call while on the employer's premises compensable under California labor code). SA-Tech, however, maintains that any wage claims against it as a contractor to the Navy, and as the Navy's agent, are governed solely by the Fair Labor Standards Act, which generally does not require wages be paid to seamen during off-duty time onboard a vessel. *See* 29 U.S.C. § 206(a)(3) ("seaman on an American vessel" is entitled to compensation "for all hours during such period he was actually on duty[,] . . . on-watch or was, at the direction of superior officer, performing work or standing by, but not including off-duty

---

[1] The first contract was executed in 2004, but SA-Tech did not begin performing work on the contract until 2008 when it received its first Task Order. ECF No. 24-11 at 3 n.1.

periods . . ."); *see also* 29 C.F.R. §§ 785.22-23.  The California court has not yet finally determined which party has the better of the argument.

In September 2015, SA-Tech notified the Navy of the California Action and that SA-Tech has incurred "substantial legal fees to aggressively defend" itself in that case.  ECF No. 24-11 at 5; ECF No. 24-8 at 2.  SA-Tech thus sought the Navy's participation in the litigation because it believed the Navy's involvement would have a "material impact" on and "help expedite" resolution.  ECF No. 24-11 at 5; *see also* ECF No. 24-8 at 2.

In October 2015, SA-Tech and CPC noted removal of the lawsuit to the United States District Court for the Central District of California, arguing that the work for the Navy involved matters of national security, that a federal question existed, and that the United States was an indispensable party to the lawsuit.  ECF No. 49-3 at 1-2 (Notice of Removal, *Richard v. Sys. App. & Tech.,* No. 56-2015-00471720 (Cal. Super. Ct. Oct 7, 2015)).  The district court rejected SA-Tech's arguments and remanded the case shortly thereafter.  ECF No. 49-2 at 2-4 (Order, *Richard v. Sys. App. & Tech.*, No. 2:15-cv-07767 (C.D. Cal. Dec. 14, 2015)).

SA-Tech and CPC next moved to dismiss the California Action in February 2016, arguing that because they were properly construed as an "agent" of the Navy, the United States was the only defendant under the exclusivity provision of the Suits in Admiralty Act ("SIAA"), 46 U.S.C. § 30904, and the Public Vessels Act ("PVA"), 46 U.S.C. § 31103.  ECF No. 49-4 (Mot. to Dismiss, *Richard v. Sys. App. & Tech*., No. 56-2015-00471720 (Cal. Super. Ct. Feb. 16, 2016)).  The California Superior Court ultimately denied that motion in August 2018, finding SA-Tech and CPC were not agents of the Navy; the SIAA and PVA's exclusivity provision did not apply on the facts presented; and that the state wage and hour lawsuit did not involve a claim

against the United States or "any other identifiable interest or policy."  ECF No. 49-5 (Minute

Order, *Richard v. Sys. App. &Tech.*, No. 56-2015-00471720 (Cal. Super. Ct. Aug. 14, 2018)).

On June 27, 2017, SA-Tech turned to the Navy once again,[2]  submitting a letter to its

contracting officer styled as a "claim" made pursuant to the Contract Disputes Act, 41 U.S.C. §§

7101, *et seq.* (the "CDA").  ECF No. 24-11.  In the correspondence, SA-Tech asked the Navy to

determine:

> (i)  Whether SA-TECH is the Navy's agent pursuant to the PVA and
> SIAA.
>
> (ii) Whether, if SA-TECH settles a lawsuit for overtime and other
> back-pay arising in connection with SA-TECH's performance of the
> cost reimbursement Contracts, the Navy will treat the settlements as
> allowable costs under the Contracts.
>
> (iii) Whether the Navy believes that SA-TECH should pay its
> employees and subcontractors overtime pay under the 2013 Contract
> for time SA-TECH and subcontractor employees spend asleep or
> otherwise not working while aboard Navy ships.

ECF No. 24-11 at 8.  In the correspondence, SA-Tech also emphasized to the Navy that "[i]f you

believe SA-Tech should pay wages (including overtime), please confirm that the Navy will treat

the wages (including overtime) as an allowable cost under the 2013 Contract."  *Id.* at 12-13.  SA-

Tech appended a certification from its Senior Vice President in which he stated that "*the amount*

*requested accurately reflects the contract adjustments for which Systems Application &*

*Technologies, Inc. believes the Government is liable.*"  *Id.* at 14 (emphasis added).

On August 24, 2017, the Navy's contracting officer denied SA-Tech's claims.  ECF No.

24-12.  As grounds, the officer rejected that SA-Tech had made a "nonmonetary" claim to the

Navy as is required for the correspondence to be considered a "claim" requiring review and

---

[2] SA-Tech submitted its letter on June 27, 2017, several months after the Government shared its position with plaintiffs' and defense counsel in the California Actions that it viewed SA-Tech and CPC as independent contractors, not agents of the Government.  ECF No. 24-10.

resolution by the Navy.  Instead, the contract officer read the claim as an attempt to "cloak" a monetary claim as a request for contract interpretation.  *Id.* at 4.  In support of this conclusion, the contract officer noted that the correspondence had not identified any contractual term or provision in need of clarification; that its purported contractual interpretation did not impact any ongoing performance obligations; that SA-Tech had not presented the Navy with any costs incurred; and finally, that its claim was premature.  ECF No. 24-12.  As to SA-Tech's request for the Navy to confirm whether it viewed the contractor as an "agent," the contracting officer similarly did not reach the request because agency was being litigated separately, and the officer had been directed not to comment on the validity of SA-Tech's request.  *Id.* at 6.

Dissatisfied with the contracting officer's response, SA-Tech filed complaints in this Court and the United States Court of Federal Claims on the same day seeking identical relief in both courts.[3]  ECF No. 1; ECF No. 49-1 at 11; *SA-TECH v. U.S.*, Case No. 18-1252C (2018), ECF No. 1.  Specifically, SA-Tech asks this Court to declare that pursuant to the PVA and SIAA, SA-TECH acts as the Navy's agent in its performance of its contracts (Count I); whether, under California law, SA-Tech is required to pay its employees overtime and other compensation and, if so, whether those costs are "allowable" under the contract between SA-Tech and the Navy (Count II); and whether settlement costs  are allowable under the contract (Count III).  ECF No. 1.  SA-Tech also asks this Court to enjoin the Navy from making further assertions that SA-Tech is not its agent (Count IV).  *Id.*

The Government moves to dismiss the Complaint pursuant to Rules 12(b)(1), 12(b)(6), 12(c), and alternatively for summary judgment under Rule 56.  ECF No. 49-1 at 6-8.  The

---

[3] The Federal Claims lawsuit is currently stayed.  ECF No. 49-1 at 11 n.3 (citing 28 U.S.C. § 1500; *United States v. Tohone O'Odham Nation*, 563 U.S. 307, 311 (2011) ("The CFC has no jurisdiction over a claim if the plaintiff has another suit for or in respect to that claim pending against the United States or its agents.")).

Government focuses primarily on its jurisdictional challenge to SA-Tech's claims and alternatively argues that SA-Tech is not entitled to declaratory judgment. ECF No. 49-1 at 12-22. SA-Tech cross moves for summary judgment on the question of whether it is an "agent" of the Navy (Counts I and IV), and that California's wage and hour law does not apply to its contracts (Count II). ECF No. 52-1.

## II.      STANDARD OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a court's authority to hear a matter. *See U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347–48 (4th Cir. 2009); *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). The plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). If "a claim fails to allege facts upon which the court may base jurisdiction," the court must dismiss the action. *Davis*, 367 F. Supp. 2d at 799.

In determining whether jurisdiction exists, "the court may look beyond the pleadings and the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)) (internal quotation marks omitted). Whether the Court retains subject-matter jurisdiction must be decided in advance of any merits determination. *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999).

## III.     ANALYSIS

The Government moves to dismiss all counts for lack of jurisdiction. ECF No. 49. The Government more particularly contends that because Plaintiffs have failed to exhaust statutorily proscribed administrative remedies that are a precondition to this suit, the Government cannot be

said to have waived its sovereign immunity; thus, the Court is without power to hear the case. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction"); *see also Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983) (finding waiver of sovereign immunity "must be strictly observed, and exceptions thereto are not to be lightly implied.").

It is fundamental that the United States enjoys immunity from suit unless expressly waived. *Lane v. Pena*, 518 U.S. 187, 192 (1996). One mechanism for such waiver is by operation of statute. *See, e.g.*, *Sossamon v. Texas*, 563 U.S. 277, 290 n.7 (2011). Where, as here, the Government conditions waiver on a party's exhausting statutorily proscribed administrative remedies, then any failure to exhaust bars suit in this Court.

In this matter, three interlocking statutory provisions—the CDA, SIAA and PVA—establish the scope of this Court's power to hear contractor claims involving operations of seagoing vessels. *See* 41 U.S.C. § 7102(d); 46 U.S.C. §§ 30903-04; *id.* §§ 31102-03. The relevant provisions overlap in many respects but provide distinct preconditions to trigger the Government's limited waivers of sovereign immunity in the maritime context.

The SIAA provides:

> In a case in which, if a vessel were privately owned or operated, or if cargo were privately owned or possessed, or if a private person or property were involved, a civil action in admiralty could be maintained, a civil action in admiralty in personam may be brought against the United States or a federally-owned corporation.

46 U.S.C. § 30903.

The PVA similarly provides that an admiralty action may be brought against the United States for "damages caused by a public vessel of the United States."[4]  *Id.* § 31102.

Although jurisdiction may appear broadly conferred under the SIAA or PVA, *see* 28 U.S.C. § 1333 (vesting in federal courts original jurisdiction over admiralty cases), they must both be read in conjunction with the CDA.  The CDA provides a "comprehensive scheme for the resolution" of cases involving "any express or implied contract ... entered into by an executive agency for ... the procurement of services." 41 U.S.C. § 7102(a)(2); *Lockheed Martin Corp. v. Defense Contract Audit Agency*, 397 F. Supp. 2d 659, 664 (D. Md. 2005).  When the CDA applies, it is the "exclusive mechanism for dispute resolution.'"  *Id*. (quoting *Dalton v. Sherwood Van Lines*, *Inc.*, 50 F.3d 1014, 1017 (Fed. Cir. 1995)).   Because this matter involves an express contract for the procurement of services, the CDA governs this dispute.

Under the CDA, the government contractor must exhaust certain administrative requirements as a precondition to suit.  41 U.S.C. § 7102; *see also United States v. J&E Salvage Co.*, 55 F.3d 985, 987-88 (4th Cir. 1995) (noting that "disguised contract actions may not escape the CDA"); *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1264 (Fed. Cir. 1999) (citations omitted).  First, the contractor must present a valid claim to the agency's contracting officer.  *See Southwest Marine, Inc. v. United States*, 43 F.3d 420, 423 (9th Cir. 1994); *see* 41 U.S.C. § 7103(a).  Second, if the contractor submits a valid claim, it must then wait to receive a final written decision on the claim from the contracting officer.  *See* 41 U.S.C. § 7103(d); *see also James M. Ellett Const. Co. v. United States,* 93 F.3d 1537, 1541-42 (Fed. Cir. 1999).  Third, if the contractor receives a final decision from the agency denying the claim, it must then appeal

---

[4] Generally, a "suit for damages caused by a public vessel falls under the PVA," and all "other admiralty claims against a federally-owned vessel ... [fall] under the SIAA." *Ali v. Rogers*, 780 F.3d 1229, 780 F.3d 1234 (9th Cir. 2015).

the decision to either the agency board of contract appeals or the United States Court of Federal Claims.  41 U.S.C. § 7104.

As for "maritime contracts," such as the one before this Court, the CDA harmonizes all three statutes.  *Southwest Marine, Inc. v. United States*, 926 F. Supp. 142, 143-44 (N.D. Cal. 1995).  Section 603 of the CDA confers on a federal court jurisdiction over maritime contracts brought  pursuant to the SIAA and the PVA, but only if the contractor has satisfied the CDA's exhaustion requirements.[5]  *Id.* (citing 46 U.S.C. § 30901 *et seq*; 46 U.S.C. § 31101 *et seq*.); *see also East Coast Repair & Fabrication, LLC v. United States*, 199 F. Supp. 3d 1006, 1025 (E.D. Va. 2016); *Colonna's Shipyard, Inc. v. United States*, No. 2:14-CV-331, 2005 WL 9008222, at *6 (E.D. Va. Dec. 14, 2015) (finding subject matter jurisdiction under 41 U.S.C. § 7102(d) to hear an appeal of a contracting officer's final decision in a dispute involving a maritime contract).  As one court explained:

> [T]he language of § 603 has been carefully drafted to give jurisdiction to the federal district courts only after the administrative remedies mandated by the CDA have been exhausted.  The contractor must be at the stage of either filing suit following the decision of the contracting officer as contemplated by § 609(a)(1), or appealing an adverse decision by the ABCA as contemplated by § 607(g). Then, and only then, can the contractor file suit in federal district court if the CDA claim arises out of a maritime contract.

*Southwest Marine*, 926 F. Supp. at 144; *see also Bethlehem Steel Corp. v. Avondale Shipyards,[6] Inc.*, 951 F.2d 92, 94 (5th Cir.1992) (affirming dismissal of contractor's CDA action arising out

---

[5] The CDA provides: "Appeals under section 7107(a) of this title and actions brought under sections 7104(b) and 7107(b) to (f) of this title, arising out of maritime contracts, are governed by chapter 309 or 311 of title 46 [SIAA and PVA], as applicable, *to the extent that those chapters are not inconsistent with this chapter*." 41 U.S.C. § 7102(d) (emphasis added).

[6] The Court in *Bethlehem Steel* provided further explanation as to the interaction of the CDA and SIAA: "Section 603 permits appeals to be governed by the [SAA] or the [PVA] 'to the extent those chapters are not inconsistent with this chapter.'  In the context of the Contract Disputes Act, 'appeals' are requests for relief from adverse administrative contract determinations. Had Congress intended to exempt government maritime contracts entirely

of a maritime contract for lack of subject matter jurisdiction because the contractor had not

exhausted the CDA's administrative remedies).

As to the applicability of the CDA's exhaustion requirement, the parties agree.  ECF No.

49-1 at 6, 28; ECF No. 52-1 at 28.  They part company, however, on whether SA-Tech has

presented valid claims sufficient to satisfy its exhaustion requirement under the CDA.  The Court

addresses whether SA-Tech has exhausted remedies for each of the three claims raised in this

case.

A.      Settlement and Future Wage Claims (Count II & III)

In Counts II and III, SA-Tech asks this Court to declare that the Navy must contribute to

future settlement costs arising from the California Action as well as pay related "future wages."

ECF No. 1.  The central issue, therefore, is whether SA-Tech's June 27, 2017 letter to the Navy

contract officer presented valid "claims" for each under the CDA.  ECF No. 24-11.

Although the CDA does not define the term "claim," the Federal Acquisition Regulations

("FAR") do.  A claim is:

> a written demand or written assertion by one of the contracting
> parties seeking, as a matter of right, the payment of money in a sum
> certain, the adjustment or interpretation of contract terms, or other
> relief arising under or relating to this contract.

48 C.F.R. § 52.233-1(c).   Accordingly, a "claim" can be either monetary or non-monetary in

nature, and courts have jurisdiction to hear appeals concerning both.  *Clearwater Constructors,*

*Inc. v. United States*, 56 Fed. Cl. 303, 307 (2003) (citations omitted).

A valid monetary claim must include a "sum certain."  *See* 48 C.F.R. § 52.233-1(c).

When the claim exceeds $100,000, the contractor must also certify the veracity of supporting

---

from the Contract Disputes Act, it could have done so more forthrightly than simply by allowing 'appeals' to be
maintained in the federal district courts."  *Bethlehem Steel Corp*., 951 F.2d at 94 (citations omitted).

documentation and accuracy of the contract adjustment. *Id.* By contrast, where a "monetary claim" fails to identify a "sum certain," that failure is "fatal to jurisdiction under the CDA." *Northrop Grumman Computing Sys., Inc. v. United States*, 709 F.3d 1107, 1112 (Fed. Cir. 2013); *see also Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (a claim for money must include a sum certain); *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed Cir. 1987) (a claim under the CDA must clearly and unequivocally give the contracting officer "adequate notice of the basis and amount of the claim."). By contrast, a claim can be non-monetary if the contractor seeks government interpretation of a contractual term. However, the contractor must assert "specific contractual and legal grounds for its interpretation" to constitute a non-monetary claim. *GPA-I, LP v. United States*, 46 Fed. Cl. 762, 766 (2000) (quoting *Alliant*, 178 F.3d at 1265).

In practice, the distinction between monetary and non-monetary claims is not always straightforward. Contractors have attempted to "circumvent" the "sum certain" requirement for presenting a monetary claim by repackaging "monetary claims as nonmonetary." *Securiforce Int'l Am., LLC v. United States*, 879 F.3d 1354, 1360 (Fed. Cir. 2018). Accordingly, litigants cannot overcome jurisdictional limitations by "dressing up monetary claims … as requests for nonmonetary, declaratory relief." *Id.* (citing *Doe v. United States*, 372 F.3d 1308, 1313 (Fed. Cir. 2004) (collecting cases)). Predictably then, the battleground remains whether the claim is "properly classified as monetary or nonmonetary." *Id.*

To make this determination, the Federal Circuit[7] has advised that a court should "look to the substance" of the claims filed in the suit for which jurisdiction is at issue to determine whether the "claim" is a monetary one. *Id.* (citing *Brazos Elec. Power Coop., Inc. v. United*

---

[7] Since non-maritime CDA claims are appealed to either the Federal Circuit or the Court of Federal Claims, *see* 41 U.S.C. §§ 7104, 7107, their guidance is particularly germane to this dispute.

*States*, 144 F.3d 784, 787 (Fed. Cir. 1998). Where the "gravamen" of the claim is "money," then this Court must construe it as a "monetary claim" for which a sum certain must be included. *Weststar Eng'g, Inc.*, ASBCA No. 52484, 02–1 BCA ¶ 31759 (Feb. 11, 2002); *see Kellogg Brown & Root Servs. v. United States*, 115 Fed. Cl. 168, 184 n.8 (2014) (adopting *Weststar* standard). "If 'the only significant consequence' of the declaratory relief sought 'would be that [the plaintiff] would obtain monetary damages from the federal government,'" the Federal Circuit has explained, then "the claim is in essence a monetary one." *Securiforce*, 879 F.3d at 1360 (citing *Brazos*, 144 F.3d at 787). In those circumstances, the plaintiff must have satisfied the preconditions of having presented the claim with a *sum certain* to the contracting officer in advance of filing suit. Otherwise, the claim has not been exhausted.

  With this guidance, the Court turns to SA-Tech's claims. As to SA-Tech seeking "clarification" regarding settlement costs and future wages, the Government urges the Court that the claims are "monetary" but lack a sum certain, and so cannot satisfy the CDA's preconditions to exhaustion. ECF No. 49-1 at 15. SA-Tech for its part insists that its claims are nonmonetary because it requests only that Navy advise as whether each are "allowable" expenses under the contract. ECF No. 52-1 at 31-37.

  When viewing the claims and June 27 letter most favorably to SA-Tech, the Court agrees with the Government. In this action, SA-Tech asks this Court to declare that whatever the eventual settlement costs may be, they are borne by the Navy. Similarly, SA-Tech asks the Navy in its June 27 letter to confirm whether it will pay the costs of settling the state court class action litigation. *Id.* at 42 (asking this court to declare that "SA-TECH is an agent of the Navy under the PVA and SIAA for purposes of the contracts and the Richard action"). The gravamen of the claim plainly concerns money: it is about who pays money damages as the result of a settlement

or future wages in light of the California Action.  Accordingly, the "only significant consequence" of this Court granting relief under the claim is to confirm the Navy's obligation to reimburse it for the sums SA-Tech may pay to settle the case.  *Securiforce*, 879 F.3d at 1360 (citing *Brazos*, 144 F.3d at 787); *see also KBR*, 115 Fed. Cl. at 184 (finding the "gravamen of the complaint" dictates whether the claim is monetary or nonmonetary).  This claim, therefore, is undoubtedly "monetary" for which a "sum certain" was required but not provided.

SA-Tech's claim for clarity on whether future additional wages are also allowable under the contract fares no better.  SA-Tech styles the request as seeking "contractual guidance" when it is really seeking assurance of future monetary payment from the Navy.  ECF No. 24-11 at 2; ECF No. 49-1 at 18.  The Government said it well: the claim put before this Court is "inextricably intertwined with its potential monetary liability that might follow from the unresolved state court lawsuit, and … [is] no more than an attempt to commit the Navy to pay costs SA-Tech might incur."  *Id.*  It too is a "monetary claim" lacking a "sum certain."

On both the settlement and future wage claims, *Kellogg Brown & Root Services, Inc. v. United States*, 115 Fed. Cl. 168 (2014), is on point.  As here, government contractor KBR had been sued by its third-party employees for money damages arising from exposure to hazardous chemicals while working for KBR pursuant to its contract with the U.S. Army Corps of Engineers.  *See id.* at 170.  KBR sent the Army Corps contracting officer several letters seeking (1) "indemnification for claims asserted by third persons for personal injury" and (2) the Government's participation in the "defense and resolution" of the litigation.  *Id.* at 174-75.  The Court held the former constituted a monetary claim under the CDA.  *See id.* at 175.  The Court reasoned that the purpose of an indemnification clause is to compensate for losses or damages sustained, and that consistent with that purpose, KBR focused heavily on the "catastrophic

financial exposure for personal injury and property damage claims" arising from the litigation. *Id.* The Court thus concluded, "[i]n these circumstances, not even the most artfully-crafted letter can avoid the monetary aspect of a request titled 'Request for ... Indemnification.'" *Id.* And because the Court found the request was monetary, it deemed the claim "invalid for failure to request a sum certain," and dismissed for lack of jurisdiction. *Id.* at 182.

Much like KBR's request for indemnification, SA-Tech's seeks to secure monetary contribution from Navy for "settlement costs" arising from the third-party litigation of SA-Tech employees. ECF No. 24-11 at 2. Similarly, seeking future wages from the Navy as allowable under the contract is likewise a monetary claim. *See KBR*, 115 Fed. Cl. at 175. Thus, as in *KBR*, failure to include a sum certain in these claims to the Navy renders them unexhausted under the CDA.[8]

SA-Tech's arguments to the contrary are unavailing. SA-Tech first contends the FAR's "claim" definition contemplates three different types of claims, the Government's efforts to narrow the "sum certain" requirement rests on a "flawed premise," that has been rejected by other courts. ECF No. 52-1 at 29. SA-Tech rely on two decisions that do little to advance the analysis. *See id.* (citing *Reflectone*, 60 F.3d at 1577-78; *Alliant*, 178 F.3d at 1270). Neither addressed the question of whether a submitted claim was "monetary," and instead focused on the extension of jurisdiction in circumstances not contested here.

---

[8] SA Tech relies heavily on *DaVita, Inc v. United States*, 110 Fed. Cl. 71, 86 (2013), in which the Court of Federal Claims construed a contract claim as non-monetary, because it concerned whether the contract covered disputed service orders. But critically, *KBR* squarely rejected *DaVita,* 110 Fed. Cl. at 184 n.8, and reaffirmed the principle that where the "gravamen" of a claim is monetary, the contractor cannot avoid the requirements of a sum certain by casting it as a claim for contract interpretation." 115 Fed. Cl. at 184 (citing *Westar*, ASBCA No. 52484, 02-1 BCA ¶ 31759). This Court agrees, that where, as here, the "real issue is money," *Westar*, ASBCA No. 52484, BCA ¶ 31759, failure to include a "sum certain" is fatal to this Court's jurisdiction.

SA-Tech next points to a separate FAR provision which "directs contractors to seek such guidance when faced with unusual costs."  ECF No. 52-1 at 31 (citing 48 C.F.R. § 31.109).  But this provision concerns advance agreements and merely encourages parties to reach a meeting of the minds on special or unusual costs before such costs incurred.  *See ITT Federal Services Corp. v. Widnall*, 132 F.3d 1448, 1451 (Fed. Cir. 1997).  The provision does not address whether a claim made pursuant to the CDA is "monetary" such that it requires inclusion of a sum certain for exhaustion purposes. *See* 48 C.F.R. § 52.233-1(c).

Lastly, SA-Tech urges this Court to find in its favor to avoid "forcing SA-Tech to take an unwarranted multi-million dollars risk" that should instead fall to the Navy.  ECF No. 52-1 at 35.  But SA-Tech provides this Court no principled reason to ignore fundamental exhaustion requirements set forth in the CDA.  The CDA makes plain that prior to filing suit in this Court, SA-Tech must exhaust its remedies.  For monetary claims, that requires presenting the Navy with a sum certain.  *See* 48 C.F.R. 52.233–1.  This it did not do.  And so, rather than interpreting the law as the plaintiffs wish it were, the Court is constrained to interpret it as it actually is.  Put plainly, even well-reasoned policy arguments cannot relax jurisdictional requirements.

In sum, the Court finds that SA-Tech's requests—seeking clarification that settlement costs and additional future wages are allowable under the contract—are monetary claims that lacked a sum certain.  This Court lacks jurisdiction to reach the merits and accordingly grants the Government's motion as to Counts II and III.

### B.      Claims Related to its Agency Status

The Government next challenges this Court's jurisdiction over SA-Tech's request for "confirmation" of its agency status (Counts I and IV).  ECF No. 49-1 at 18-20; ECF No. 54 at 10-11; ECF No. 24-11 at 8.  The Government rightly classifies the claim as nonmonetary but

nevertheless argues it is invalid because the request was not asserted "as a matter of right," as required under the FAR's definition.  ECF No. 49-1 at 18-20.  The Court agrees.

For these counts, a different aspect of the FAR definition of "claim" is implicated.  A "claim" includes "written demand or written assertion by one of the contracting parties seeking, *as a matter of right* . . . other relief … relating to this contract."  48 C.F.R. § 52.233-1(c) (emphasis added).  Accordingly, the Government contends that SA-Tech's letter request regarding agency status is not one owed to SA-Tech "as a matter of right," and thus is not a claim for purposes of the CDA.  ECF No. 49-1 at 18-19; *see Reflectone*, 60 F.3d at 1576 ("That the demand is made as a matter of right constitutes the essential characteristic of a "claim" according to both the FAR and the dictionary definitions.").

The Court again looks to the Federal Circuit for guidance.  In *Alliant*, the Court was called upon to determine whether the plaintiff-contractor's claim was one made "as a matter of right."  178 F.3d at 1265.  The contractual provision at issue concerned whether the Government exercised certain options within the allowable time frame under the contract.  *Id.* at 1263-64.  When the Army tried to exercise the option outside the applicable time period, Alliant submitted a claim letter asserting that it had the right to refuse performance under the contract's terms.  *Id.* at 1264.  In concluding that Alliant's claim concerned an entitlement "as a matter of right,"  the Court explained that the requires that contractor assert "a demand for *something due or believed to be due* rather than, for example, a cost proposal for work the government later decides it would like performed."  *Id.* at 1265 (citing *Reflectone*, 60 F.3d at 1576; *Essex Electro Eng'rs, Inc. v. United States*, 960 F.2d 1576, 1580–81 (Fed. Cir. 1992)) (emphasis added).  Because Alliant's letter "asserted specific contractual and legal grounds for its interpretation of the option and by doing so met that requirement," the request was one made "as a matter of right."  *Id.*

16

Here, by contrast, SA-Tech makes no such similar claim.  Nothing in the June 27 letter explains in any way how "confirmation" of its status as an agent of the Navy is a demand owed "as a matter of right." ECF No. 24-11.  Although SA-Tech asserts generally that the Navy maintains an implied duty not to interfere in the performance of the contract between the parties, *id.* at 11, it fails to explain how some non-specific "implied" duty entitles it to obtain from Navy its position on whether it views SA-Tech as its agent.  Put differently, the agency question bears not at all on SA-Tech's rights, obligations, or duties under the contract.  Rather it is another attempt to visit on Navy potential liability for third-party monetary claims arising from the California Action.  *See* ECF No. 52-1 at 37-39; ECF No. 57 at 10-13.

In response, SA-Tech concentrates largely on whether the agency question is properly resolved by declaratory action.  *See* ECF No. 52-1 at 37-39.  More particularly, SA-Tech relies solely on *Todd Construction, L.P. v. United States*, 656 F.3d 1306 (Fed. Cir. 2011), to argue that it need only present a claim "related to the contract," to satisfy the FAR's "claim" definition. ECF No. 52-1 at 37 (citing 656 F.3d at 1314).  But in *Todd*, the sole issue before the Court was whether the requested relief "relate[d] to the contract."  656 F.3d at 1311.  Indeed, the parties had already *agreed* that the contractor had sought relief "as a matter of right."  *Id*.  Thus, *Todd* does nothing to aid the Court in ascertaining whether this claim is one made "as a matter of right." *Alliant*, 178 F.3d at 1265; *cf. Todd*, 656 F.3d at 1308 (citing to specific regulatory provision entitling contractor to further review of negative report).  Because SA-Tech put forward no basis for its entitlement to seek such clarification from the Navy, the request is not a "claim" under the CDA.  Thus, the claim cannot proceed in this Court.

In sum, the Court concludes that none of SA-Tech's underlying three requests as memorialized in the June 2017 letter were valid claims under the CDA.  Accordingly, none are

17

properly before this Court.  The Government's motion to dismiss pursuant to 12(b)(1) is

therefore granted.[9]

## IV.    CONCLUSION

For the foregoing reasons, the Court grants the Defendant's motion to dismiss for lack of

jurisdiction (ECF No. 49) and denies as moot SA-Tech's cross-motion for partial summary

judgment (ECF No. 52).  Accordingly, the Defendant's motion to dismiss is granted.  A separate

order follows.


  9/30/2020                                                                        /S/
Date                                                                      Paula Xinis
                                                                          United States District Judge

---

[9] Even if this Court had jurisdiction, it would dismiss on prudential grounds. Two conditions must be satisfied
before the Court may issue declaratory relief. *See White v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 913 F.2d 165,
167 (4th Cir. 1990).  First, the dispute must be a "case or controversy" within the confines of Article III of the U.S.
Constitution.  *Id.* "Second, the trial court, in its discretion, must be satisfied that declaratory relief is appropriate—
the 'prudential' inquiry."  *Id.* As to the prudential inquiry, the court should consider: "(1) whether the judgment will
'serve a useful purpose in clarifying the legal relations in issue'; or (2) whether the judgment will 'terminate and
afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Id.* at 168 (citations
omitted); *see also Alliant*, 178 F.3d at 1271 (stating courts are "free to consider the appropriateness of declaratory
relief, including … whether the legal remedies available to the parties would be adequate to protect the parties'
interests"); *id.* (refusing declaratory relief "in the absence of a need for an early declaration of the parties' rights" is
"analogous to the traditional rule that courts will not grant equitable relief when money damages are adequate.").
SA-Tech's requested declaratory relief as to any of the claims—settlement, future wages, or agency status—would
not affect either party's performance under the contract, as much as SA-Tech tries to cast its claims in that light.  *See*
ECF No. 52-1 at 40; *see also Alliant*, 178 F.3d at 1271 (distinguishing between a claim regarding whether a
contractor deserves "additional compensation" and one that implicates a party's performance obligations); *CW Gov't
Travel, Inc. v. United States,* 63 Fed. Cl. 369, 389 (2014) (a question "concerning the contractor's then-current
obligation to perform" was properly subject to a CDA claim for declaratory judgment.").  Nor would judgment
afford relief from uncertainty, insecurity or controversy in the California action. The Navy is not a party to the suit
and all attempts to pull it within that case have failed.  Rather, SA-Tech appears to pursue this action in the hopes
that Navy may lighten the financial burden of an adverse verdict or settlement in the California Action. The Court
declines to wade into ongoing litigation in the manner SA-Tech urges.